# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 15-990V
(To be Published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | Special Master Corcoran |
| BRITTANI SMITH, | * | |
| | * | Filed: June 22, 2016 |
| Petitioner, | * | |
| v. | * | Attorney's Fees and Costs; |
| | * | Dismissal Without Hearing; |
| SECRETARY OF HEALTH | * | Reasonable Basis. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Andrew D. Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.

*Debra Begley,* U.S. Dep't of Justice, Washington, DC for Respondent.

### DECISION DENYING ATTORNEY'S FEES AND COSTS[1]

On September 8, 2015, Brittani Smith filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] The Petition alleged that the tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine Ms. Smith received on October 28, 2011, caused her to develop Multiple Sclerosis ("MS"). *See* Pet. at 1-3 (ECF No. 1). By January 2016, however, Petitioner had determined that she could not succeed on her claim, and I granted her request to dismiss the petition by decision dated January 29, 2016 (ECF No. 13).

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Ms. Smith has now requested an award of attorney's fees and costs in the combined amount of $10,103.31. Application for Final Attorney's Fees and Costs, dated Apr. 12, 2016 (ECF No. 18) ("Fees App.").[3] Respondent opposes the fees application, arguing that the claim lacks reasonable basis. For the reasons stated below, I deny Petitioner's request for fees and costs.

**Procedural History and Fees Request**

As noted above, the case was filed in September 2015. Pet. at 1. The petition expressly stated that Ms. Smith received the Tdap vaccine in October 2011, but then experienced no symptoms related to it until September 2012. *Id.* at ¶ 3 and 4 at ¶ 15. In fact, no treater even considered the diagnosis of MS to explain Ms. Smith's symptoms until September 2013 – nearly two years after vaccination. *Id.* at ¶¶ 5-8. However, Petitioner alleged that one of her physicians, Dr. Singer, had informed her that the brain lesions that were observed via MRI were a "couple of years old," and therefore (in theory) could have developed in an acceptable timeframe in connection with her Tdap vaccination sometime in the year or two before. *Id.* at 2 ¶ 9.

The history of counsel's representation of Ms. Smith bears on the present fees request. The billing invoices filed with the Fees Application reveal that her counsel, Andrew D. Downing, Esq., and other attorneys and paralegals at the law firm of Van Cott & Talamante, PLLC, had begun working on the case in September 2014 – a year prior to its filing. *See* Ex. A to Fee App. (ECF No. 18) at 23-36.[4] Given that the Petitioner ultimately alleged onset of symptoms in September 2012, under the Act's three-year limitations period Ms. Smith had until September 2015 to file her claim – and thus her attorneys had more than a year to investigate the case. Section 16(a)(2).

Between September 2014 and the date of the petition's filing, Mr. Downing billed 8 hours to the matter. Fees App. (Ex. A) at 1-2. Justin Redman, an associate working at Mr. Downing's firm, billed 6.6 hours to the matter in the same timeframe (Ex. A at 3-4), while two paralegals – Bob Cain and Danielle Avery – collectively performed 16.3 hours of work (*Id*. at 4-9). The attorney invoices reveal that in this period of time medical records were obtained and reviewed, but no attorneys working the matter displayed any urgency about the case until August 2015, when the limitations cut-off loomed. *Id.* at 1-4.

A week after the case's initiation, Petitioner filed the medical records in her possession relevant to her claim (Notice, dated Sept. 15, 2015 (ECF No. 7)), and then the Statement of

---

[3] On June 3, 2016, Petitioner filed a Supplement to her Fees Application, requesting additional sums be included in the requested award based on work performed in litigating the fees dispute. *See* ECF No. 21 ("Supplement"). The Supplement did not, however, include the purported "Exhibit K" setting forth these additional amounts – and in any event, for the reasons set forth below, this filing failure is mooted by my decision denying fees and costs in this case.

[4] Ms. Smith did not separately file exhibits to the Fee Application as attachments. Counsel should do so in the future. *See* Vaccine ECF Rules, Section IV, Filing Requirements, Paragraph 10(a).

2

Completion. *See* Sept. 16, 2015, Statement of Completion (ECF No. 8). However, little work was subsequently performed on the case, as the billing records establish. Thus, Mr. Downing billed only .2 hours of time to the matter in the entire fall of 2015. Ex. A to Fees App. at 2 (ECF No. 18 at 24).

After the filing of the Statement of Completion, I set December 18, 2015, as the deadline for the Rule 4(c) Report, and Respondent complied with my order. *See* Rule 4(c) Report, dated Dec. 18, 2015 (ECF No. 10). In it, Respondent directly challenged the claim's reasonable basis. *Id.* at 4. She argued that onset of Ms. Smith's allegedly vaccine-related symptoms was too long after the October 2011 vaccination, observing that actual treatment of MS-related symptoms began two years from vaccination. *Id.* She also noted that, despite Petitioner's allegations that a treater had informed her that the brain lesions observed on an MRI were several years old, Respondent could not identify the statement in the relevant records. *Id.*

After review of the Rule 4(c) Report, I scheduled a status conference with the parties for January 12, 2016. At that time, I stated my initial view that the case's reasonable basis seemed in doubt, echoing Respondent's concerns. *See* Scheduling Order, dated Jan. 12, 2016 (ECF No. 11). Petitioner's counsel indicated that he had been forced to file the case not long before the limitations cut-off and also had experienced difficulties communicating with Ms. Smith, but asked for the opportunity to speak to the relevant treater, and to otherwise weigh the available evidence supporting the claim. I ordered Petitioner to complete this process by mid-February, and then report back on proposed next steps. ECF No. 11 at 2.

Less than two weeks later (and long before the time I gave Petitioner to evaluate the case's ongoing merit had expired), on January 20, 2016, Petitioner filed an unopposed motion requesting a decision dismissing the case. ECF No. 12. In it, Petitioner stated that although she had acted in good faith, and based upon her understanding that the lesions discovered in 2013 may have been several years old (and therefore could have been associated with the Tdap vaccine), her review of the records did not support the allegations, and she otherwise did not expect to be able to prove when the lesions arose. ECF No. 12 at 2. She therefore opted not to proceed with her petition, and I granted the motion seeking dismissal by decision dated January 29, 2016. *See* ECF No. 13.

Ms. Smith filed the present fees application in April of this year. *See generally* Fees App. In it, she requests an award of $10,103.31 in fees reflecting the work performed on the case by Mr. Downing (15 hours at $350 per hour), plus three associates (Justin Redman (6.1 hours), Jordan Redman (.5 hours), and Courtney Van Cott (2 hours)), all billing at the rate of $195 per hour. Exs. A-C, F, and G to Fees App. She also asks that two paralegals (Mr. Cain and Ms. Avery) be reimbursed at the rate of $100 per hour for a combined total of 24.2 hours of work. Exs. H-I to Fees App. Finally, she requests reimbursement of $756.31 in other costs, which include copying, filing costs, and medical records charges, among other things. Ex. A to Fees App. at 18-20.

3

Petitioner's fees request attempted to explain why the case was withdrawn so quickly after filing, and how that relates to the reasonable basis of her claim. Thus, although Petitioner admits that counsel began work on the matter a year prior to filing, there was a lengthy period of time (specifically, March to August) during which counsel "lost contact" with Ms. Smith. Fees App. at 4. Only after Ms. Smith reestablished contact with counsel did work on the case resume – but by that point counsel had little over a month to file the matter before the end of the limitations period. *Id.* Accordingly, counsel could do no better than file an "incomplete petition" (Fees App. at 5) – and therefore was unable to attempt to corroborate Ms. Smith's statements about what she had been told by Dr. Singer about her brain lesions and their origin until after the case's filing. *Id.* at 5-6.

Respondent opposed the fees application on April 29, 2016. ECF No. 25 ("Opp."). She vigorously contested reasonable basis, for the same reasons set forth in her Rule 4(c) Report. Opp. at 9-11. In particular, she noted the lack of record support for the claim, including the absence of recorded treater views that the Tdap vaccine had a causal relationship to Ms. Smith's MS. *Id.* at 9. She also stressed the large gap in time between vaccination and onset of MS-related symptoms (23 months) as facially suggesting the claim's weaknesses. *Id.* at 10.

Petitioner replied in support of her fees application on May 13, 2016. ECF No. 20 ("Reply"). She reiterated therein prior arguments, but amplified her assertion that her claim had reasonable basis with some reference to the scientific plausibility of the theory that the Tdap vaccine could cause a demyelinating disease like MS. Reply at 4-5. She also again maintained that the six-month communication gap with Ms. Smith forced counsel to file the petition on the eve of the statute of limitations cut-off, thereby making it impossible to have completed an investigation into the claim's basis. *Id.* at 7-8. The matter is now fully ripe for adjudication.

**ANALYSIS**

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[5] *See, e.g., Allicock v. Sec'y of Health & Human Servs.,* No. 15-485V, *slip op.* at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016); *Gonzalez v. Sec'y of Health & Human Servs.,* No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner must demonstrate, through some evidentiary showing and in light of the totality of the circumstances, that his claim had a reasonable basis for being pursued. The nature

---

[5] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is easily established – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

4

and extent of counsel's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

As Ms. Smith notes, special masters have been lenient in finding reasonable basis where prompt action before the expiration of the Act's three-year limitation period is required to preserve a claim. *See, e.g.*, *McNett v. Sec'y of Health & Human Servs.*, No. 99-684V, 2011 WL 760314, at *7 (Fed. Cl. Spec. Mstr. Feb. 4, 2011) (citing *Hearell v. Sec'y of Health & Human Servs.*, No. 94–1420V, 1993 WL 129645, at *1 (Fed. Cl. Spec. Mstr. Apr. 6, 1993) ("[b]ecause of the time constraints, it was reasonable for the petitioner to file an incomplete petition in this case")); *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("a filing on the eve of the running of the statute of limitations may be supported by less information than would be expected if counsel had more time to conduct a prefiling investigation of the factual underpinnings and the medical basis for a vaccine claim"). Yet such considerations are not relevant under the present circumstances, since counsel began work on the case a *year* before filing the petition.

In this case, I conclude from consideration of the totality of the circumstances that the petition lacked a reasonable basis at the time of its filing. The glaring deficiency in Petitioner's case is the lengthy temporal gap between her receipt of the Tdap vaccine (October 2011) and her alleged onset of symptoms. It is well understood, based on controlling Federal Circuit precedent, that a petitioner's burden of proof includes establishing a "proximate temporal relationship" between the time of vaccination and onset of alleged injury. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1279 (Fed. Cir. 2005). To satisfy this *Althen* prong, a petitioner must offer "preponderant proof that the onset of symptoms occurred within a timeframe for which, given the medical understanding of the disorder's etiology, it is medically acceptable to infer causation-in-fact." *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1352 (Fed. Cir. 2008).

The earliest date Petitioner alleges onset of MS-related symptoms was September 2012 – almost a year from the date of vaccination. Pet. at ¶ 3. But as Respondent points out, the medical record does not support the conclusion that Ms. Smith's alleged symptoms at this time were MS-related. In fact, it was not until a year later, in August and September 2013, that Petitioner's treaters began to suspect her then-existing symptoms might be MS (although none related them to the Tdap vaccine). Opp. at 2. Her brain lesions – a critical diagnostic component in identifying the existence of MS – were not observed via MRI until October 2013. *Id.* Thus, the first medical record history of any symptoms linked to MS occurred two years from the date of vaccination – a lengthy amount of time for virtually any Program claim, and a fact that should have immediately raised counsel's suspicion that the case lacked a reasonable basis.

Petitioner has offered no literature or Program decisions suggesting that any vaccine, let alone Tdap, could or did cause MS one or two years after its administration, and I have been unable to find an analog. The closest set of decisions involve the demyelinating capabilities of the hepatitis B vaccine, and thus the relationship of that vaccine to illnesses like MS. Other special masters have found that the medically appropriate timeframe for onset of MS after receipt of the hepatitis B vaccine is no longer than two months. *Rodriguez v. Sec'y of Health & Human Servs.*, No. 99-307V, 2009 WL 3824733, at *21 (Fed. Cl. Spec. Mstr. Oct. 30, 2009); *see also Pecorella v. Sec'y of Health & Human Servs.*, No. 04-1781V, 2008 WL 4447607 (Fed. Cl. Spec. Mstr. Sept. 17, 2008). Onset of MS two years after vaccination, however, has been rejected as "too long a period of time to be medically appropriate" (*Rodriguez*, 2009 WL 3824733, at *27) – especially where, as is the case here, only the later onset dates are supported by corroborative medical record evidence.

Petitioner's sole defense to her theorized onset period is that she relied on a particular treater's statements suggesting that her brain lesions could have begun developing long before their discovery in the fall of 2013. But because these statements could not be corroborated before the end of the limitations period, she was forced to act without having fully investigated this element of her claim. Fees App. at 5-6. This argument is unpersuasive. It ignores the compelling fact that her counsel began to work on the matter on September 8, 2014 – precisely a year prior to filing. Ex. A to Fees App. at 1 (ECF No. 18 at 23). The billing records, moreover, reveal plainly that lead counsel plus two associates and two paralegals worked on the case (albeit intermittently) from September 2014 to April 2015 – seven months – with a lull over the summer, and then billed even more time to the matter in August, at which point the end of the limitations period loomed.

This case thus does not present circumstances in which a petitioner has obtained an attorney to represent her in the weeks or months immediately before the limitations period is ending, allowing little time to investigate the claim. Rather, counsel had ample pre-filing time to consider the claim's merits. Indeed, Ms. Smith was able to file all medical records within a week or so of the matter's initiation, and the billing invoices reveal little to no records-gathering thereafter, demonstrating that much basic work required to initiate the claim had already been performed. Even, then, if Ms. Smith's unavailability in 2015 for a period of the time before the claim expired hampered counsel's efforts to complete investigation of her claim, counsel nevertheless had more than half a year *before* she became unavailable to evaluate her claim.

Overall, the record before me demonstrates that counsel could have determined the claim's viability in light of the onset issue long before the petition was filed. I note that Mr. Downing is not a newcomer to the Vaccine Program but has litigated numerous entitlement cases. It is reasonable to expect that a seasoned participant in Vaccine Act cases would be able to conduct, or oversee, the legal research necessary to evaluate a claim when he had the time to do so.

## CONCLUSION

Based on all of the above, because reasonable basis for the filing of this claim was lacking, I hereby DENY an award of attorney's fees. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.

**IT IS SO ORDERED.**

                                                /s/ Brian H. Corcoran
                                                Brian H. Corcoran
                                                Special Master